# Illinois Official Reports

## Supreme Court

*In re Michael D.*, 2015 IL 119178

| | |
|---|---|
| Caption in Supreme Court: | *In re* MICHAEL D., a Minor (The People of the State of Illinois, Appellee, v. Michael D., Appellant). |
| Docket No. | 119178 |
| Filed | December 17, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Richard F. Walsh, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg and Patricia Mysza, Deputy Defenders, and Christopher M. Kopacz, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |

Justices               JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

## OPINION

¶ 1      At issue is whether, in a juvenile delinquency case, this court's rules allow a minor to appeal an order continuing the case under supervision, when the order is entered after a finding of guilty. We hold that no supreme court rule provides for appeal of such orders.

¶ 2                                  BACKGROUND

¶ 3      The State filed a petition for adjudication of wardship against respondent, Michael D., charging him with two counts of misdemeanor theft. Count I alleged that he obtained control over property of another under circumstances that would have reasonably induced him to believe that it was stolen (720 ILCS 5/16-1(a)(4) (West 2014)). Count 2 alleged that he committed theft by deception (720 ILCS 5/16-1(a)(2) (West 2014)). Following a bench trial, the circuit court of Cook County found him guilty of both counts. Respondent filed a motion to reconsider, and the circuit court acquitted him of count I.

¶ 4      At a hearing, the probation officer recommended that respondent be placed on supervision for one year. The State recommended a sentence of one year's probation and asked that the minor be required to make restitution of $160 to the victim. The trial court entered an order continuing the case under supervision for one year. The order also referred respondent for a TASC evaluation and ordered him to pay $160 in restitution to the victim. The continuance of the case under supervision with conditions was memorialized in both a "Supervision Order" and a "Sentencing Order." On the sentencing order, the judge checked the box next to "No finding or judgment of guilty entered." The court did not adjudge respondent a ward of the court. The court advised respondent of his appeal rights and appointed the State Appellate Defender to represent him.

¶ 5      Respondent appealed, and the appellate court dismissed the appeal for lack of jurisdiction. 2015 IL App (1st) 143181.[1] The court explained that, until recently, supervision could be ordered in a juvenile case only prior to a determination of guilt (see 705 ILCS 405/5-615(1) (West 2012)), and the appellate court had already determined that such orders were not appealable (see *In re A.M.*, 94 Ill. App. 3d 86, 90 (1981)). The court noted that a recent statutory change allowed supervision orders to be entered in juvenile cases after a finding of guilt (see 705 ILCS 405/5-615(1)(b) (West 2014)) but held that this change did not make such orders appealable under any supreme court rule. 2015 IL App (1st) 143181, ¶¶ 53-55. The court stated that Illinois Supreme Court Rule 660(a) (eff. Oct. 1, 2001) gives the appellate

---

[1]Respondent appealed only the finding of guilty. He did not challenge the restitution order or any other condition of supervision.

court jurisdiction to review final judgments in juvenile cases,[2] but that a supervision order is not a final judgment. 2015 IL App (1st) 143181, ¶ 54. Illinois Supreme Court Rule 662 (eff. Oct. 1, 1975) gives the appellate court jurisdiction to review certain interlocutory orders in juvenile cases but not supervision orders. 2015 IL App (1st) 143181, ¶ 55. The court noted that Illinois Supreme Court Rule 604(b) (eff. Dec. 11, 2014) gives the appellate court jurisdiction over adult supervision orders but found that rule inapplicable to juvenile cases. 2015 IL App (1st) 143181, ¶ 53. The court therefore dismissed the appeal for lack of jurisdiction.

¶ 6     We allowed respondent's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 7                                                    ANALYSIS

¶ 8     On appeal, respondent argues that postdelinquency supervision orders are final, appealable orders under this court's rules. Respondent further argues that, if such a reading is not clear from the plain language of the rules, then the rules should be interpreted in a way to avoid an unconstitutional reading that would bar a juvenile's right to appeal. Alternatively, respondent asks that we amend our rules to make postdelinquency supervision orders appealable.

¶ 9     This case involves interpretation of both a statute and supreme court rules. The same rules of construction apply to both. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). Our primary goal is to ascertain and give effect to the intent of the drafters. *People v. Perkins*, 229 Ill. 2d 34, 41 (2007). The most reliable indicator of the drafters' intent is the language used, given its plain and ordinary meaning. *Id.* When the statutory language is clear, it must be given effect without resort to other tools of interpretation. It is never proper to depart from plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent. *People v. Rissley*, 206 Ill. 2d 403, 414 (2003). Our review is *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 10    The Illinois Constitution gives the appellate court jurisdiction to review final judgments. Ill. Const. 1970, art. VI, § 6. That same section provides that this court may provide, by rules, for appeals from other than final judgments. *Id.* Thus, postguilt supervision orders in juvenile delinquency cases are appealable either if they are final judgments or if this court has provided for their appealability by rule.

¶ 11    Section 5-615(1) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-615(1) (West 2014)) provides as follows:

    "§ 5–615. Continuance under supervision.

    (1) The court may enter an order of continuance under supervision for an offense other than first degree murder, a Class X felony or a forcible felony:

        (a) upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition and before the court makes a finding of delinquency, and in the absence of objection made in open court by the minor, his or her parent, guardian, or legal custodian, the minor's attorney or the State's Attorney; or

_____

[2]Jurisdiction to review final judgments is given to the appellate court not by Supreme Court Rule 660(a) but by article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6). Rule 660(a) provides that the criminal appeals rules apply to appeals from final judgments in delinquent minor proceedings.

(b) upon a finding of delinquency and after considering the circumstances of the offense and the history, character, and condition of the minor, if the court is of the opinion that:

(i) the minor is not likely to commit further crimes;

(ii) the minor and the public would be best served if the minor were not to receive a criminal record; and

(iii) in the best interests of justice an order of continuance under supervision is more appropriate than a sentence otherwise permitted under this Act."

¶ 12    Subsection (b), which allows the court to place a minor on supervision after a finding of delinquency has been made, became effective on January 1, 2014. Prior to that, supervision was an option in a delinquency case only before a delinquency finding was made. See *In re Veronica C.*, 239 Ill. 2d 134, 146-47 (2010). In *A.M.*, 94 Ill. App. 3d 86, the appellate court determined that supervision orders entered under the previous version of the statute were not appealable.[3] The *A.M.* court reasoned that supervision orders entered in a juvenile proceeding are not final orders. *Id.* at 88. See also *M.W.W.*, 125 Ill. App. 3d at 835 ("if in fact the order here is an order for continuance under supervision *** then the State's assertion of unappealability is correct"). Respondent does not contest the correctness of these decisions and concedes that a supervision order entered prior to a finding of delinquency is not an appealable order.

¶ 13    The question, then, is whether a supervision order entered *after* a finding of delinquency is a final, appealable order. A final judgment is one that finally determines the litigation on the merits " 'so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.' " (Internal quotation marks omitted.) *In re Commitment of Hernandez*, 239 Ill. 2d 195, 202 (2010) (quoting *In re M.M.*, 337 Ill. App. 3d 764, 771 (2003)). In *In re Samantha V.*, 234 Ill. 2d 359, 365 (2009), this court explained that there are three phases to a juvenile delinquency proceeding: the findings phase, the adjudicatory phase, and the dispositional phase. At the findings phase, the trial court conducts a trial and determines whether the minor is guilty. If the court finds the minor guilty, a delinquency finding is made and the court proceeds to the adjudicatory phase. At the adjudicatory phase, the court determines if the minor should be made a ward of the court. If the minor is made a ward of the court, the case then proceeds to the dispositional phase, at which the court fashions an appropriate sentence. *Id.* at 365-66. The final judgment in a juvenile delinquency case is the dispositional order. *In re J.N.*, 91 Ill. 2d 122, 127 (1982).

¶ 14    It is difficult to see how anything referred to as a "continuance" could be a final judgment. And, indeed, the plain language of section 5-615 shows that, whether entered preguilt or postguilt, a continuance under supervision is not a final order. The court may enter the continuance under supervision either "before the court makes a finding of delinquency" (720 ILCS 405/5-615(1)(a) (West 2014)) or "upon a finding of delinquency" (720 ILCS 405/5-615(1)(b) (West 2014)). Thus, the continuance under supervision is made either before phase one or immediately following phase one. This is confirmed by subsection (7) which

---

[3]The supervision order in that case was entered after an adjudicatory hearing at which the minor was found guilty of simple battery. See *A.M.*, 94 Ill. App. 3d at 87. However, it appears that no one raised the timing of the supervision order as an issue. In *In re M.W.W.*, the same court recognized that supervision is not an option after a finding of guilty. 125 Ill. App. 3d 833, 835 (1984).

- 4 -

explains what happens when the court finds that a condition of supervision has not been fulfilled: "If the court finds that a condition of supervision has not been fulfilled, the court may proceed to findings, adjudication, and disposition [preguilt] or adjudication and disposition [postguilt]." 720 ILCS 405/5-615(7) (West 2014). Whether the supervision order is entered preguilt or postguilt, it is still entered before the second and third phases. Further, when a case *has* proceeded through the second and third phases and the court must enter a dispositional order, supervision is not one of the sentencing alternatives. See 705 ILCS 405/5-710(1) (West 2014).

¶ 15    The record shows that respondent's case never made it to phase two. Although respondent insists that a final, appealable order was entered, he also concedes in his brief that the trial court never made him a ward of the court. Having conceded that phase two was not completed, the respondent cannot argue that a final order was entered. Further, although the trial judge found respondent guilty, he did *not* enter judgment on that finding when he agreed to the continuance under supervision. The order continuing the case under supervision specifically states, "No finding or judgment of guilty entered." Again, the final judgment in a juvenile delinquency case is the dispositional order, and the trial court did not enter a dispositional order. He declined to enter judgment on the guilty finding and continued the case under supervision.

¶ 16    Respondent contends that a postguilt supervision order is akin to adult supervision and that adult supervision orders are appealable. It is true that adult supervision orders are appealable, but they are appealable not because they are final judgments but because a rule of this court makes them so. This court explained in *Kirwan v. Welch*, 133 Ill. 2d 163, 167 (1989), why supervision orders are not final judgments:

> "[W]e conclude that a disposition of supervision is not a final judgment. As noted above, supervision does not dispose of the proceedings on the underlying offense but merely defers the proceedings until the conclusion of the period of supervision. An order of supervision does not possess any of the characteristics of finality: it does not terminate the litigation between the parties on the merits of the cause or settle the rights of the parties. (See *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 537.) On the contrary, when supervision is imposed, a judgment on the underlying offense is deferred until the period of supervision is completed."

¶ 17    Adult supervision orders are appealable not because they are final judgments but because of Illinois Supreme Court Rule 604(b) (eff. Dec. 11, 2014), which provides as follows:

> "(b) Appeals When Defendant Placed Under Supervision or Sentenced to Probation, Conditional Discharge or Periodic Imprisonment. A defendant who has been placed under supervision or found guilty and sentenced to probation or conditional discharge (see 730 ILCS 5/5–6–1 through 5–6–4), or to periodic imprisonment (see 730 ILCS 5/5–7–1 through 5–7–8), may appeal from the judgment and may seek review of the conditions of supervision, or of the finding of guilt or the conditions of the sentence, or both. He or she may also appeal from an order modifying the conditions of or revoking such an order or sentence."[4]

---

[4]The legislature provided in section 5-6-3.1(h) of the Unified Code of Corrections (730 ILCS 5/5-6-3.1(h) (West 2014)) that a "disposition of supervision is a final order for the purposes of appeal."

¶ 18    For two reasons, Rule 604(b) does not make juvenile supervision orders appealable. First, when it mentions supervision, probation, or conditional discharge, it specifically references sections 5-6-1 through 5-6-4 of the Unified Code of Corrections. Thus, by its plain language, it applies only to supervision orders entered under the Unified Code of Corrections. Second, as this court explained in *In re B.C.P.*, 2013 IL 113908, ¶ 5, Illinois Supreme Court Rule 660(a) (eff. Oct. 1, 2001), incorporates the criminal appeals rules for use in delinquent minor cases, but does so only as to *final* judgments.[5] Thus, we concluded in that case that Rule 604(a)'s provision granting the State the right to appeal suppression orders was not made applicable to juvenile cases through Rule 660(a). 2013 IL 113908, ¶ 5. Clearly, then, a supervision order entered in a juvenile case is not appealable under Rule 604(b).

¶ 19    The only Illinois Supreme Court Rule that grants appeals of interlocutory orders in juvenile cases is Illinois Supreme Court Rule 662 (eff. Oct. 1, 1975). This rule, however, specifies the interlocutory orders that it makes appealable, and an order continuing a delinquent minor proceeding under supervision is not one of them. Thus, no supreme court rule makes juvenile supervision orders appealable.

¶ 20    Respondent cites the canon of construction that, where reasonably possible, a statute or rule must be construed in a manner that upholds its constitutionality and validity. See *People v. Carney*, 196 Ill. 2d 518, 526 (2001). According to respondent, construing our rules to mean that postdelinquency supervision orders are not appealable would deny juveniles the fundamental right to appeal guaranteed by article VI, section 6, of the constitution. Respondent further contends that such a construction would violate the equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2) because juveniles would be treated differently than adults who receive supervision.

¶ 21    Respondent's contentions are meritless. The right to appeal guaranteed by article VI, section 6, of the constitution applies only to final judgments. Ill. Const. 1970, art. VI, § 6. Whether to allow appeals from other than final judgments is a power given exclusively to this court by article VI, section 6. *Id.* As explained above, a supervision order in a juvenile case, whether entered before or after a delinquency finding, is not a final order. Thus, construing the supreme court rules as not allowing appeals of juvenile supervision orders does not violate the constitution.

¶ 22    Respondent's equal protection claim is more of an assertion than an argument. Respondent devotes a mere four sentences to this claim and simply asserts that juveniles who receive supervision after a delinquency finding are similarly situated to adults who are sentenced to supervision and that there is no rational basis for treating them differently. As this court explained in *In re Derrico G.*, 2014 IL 114463—another case in which a juvenile tried to raise

---

The legislature, however, has no power to make nonfinal orders appealable. *In re Curtis B.*, 203 Ill. 2d 53, 60 (2002). That is a power given solely to this court by article VI, section 6, of the constitution. Ill. Const. 1970, art. VI, § 6; *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 213 (1994). This court explained in *Kirwan* that this section of the code does *not* make a supervision order a final adjudication on the merits and that it should be viewed simply as a rule of procedure supplementing Rule 604(b). *Kirwan*, 133 Ill. 2d at 167-68.

[5]Rule 660(a) provides that, "Appeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided, shall be governed by the rules applicable to criminal cases." Ill. S. Ct. R. 660(a) (eff. Oct. 1, 2001).

an equal protection claim regarding the differences between the supervision provisions for juveniles and those for adults—juveniles are simply not similarly situated to adults. This court noted that the equal protection clause forbids disparate treatment of persons who are " 'in all relevant respects alike' " (emphasis omitted) (*id.* ¶ 92 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))) and then explained that juvenile proceedings are "fundamentally different from criminal proceedings" (*id.* ¶ 103) and that the reason the Act exists separate and apart from the Criminal Code and the Unified Code of Corrections is that the "legislature has recognized that juveniles are not similarly situated to adults" (*id.* ¶ 101). More specifically, respondents placed under supervision in juvenile delinquency proceedings are not in the same situation as an adult criminal defendant placed under supervision. In the criminal context, the court must wait to dismiss the charges against the defendant until the conclusion of the supervision period and may do so only if the defendant has successfully complied with all the terms of supervision. 730 ILCS 5/5-6-3.1(e) (West 2014). By contrast, when a juvenile is placed under supervision, the court may vacate the finding of delinquency at any time and can do so even if the minor has not complied with all of the conditions of supervision. 705 ILCS 405/5-615(4) (West 2014).[6] Juveniles placed under court supervision are not similarly situated to adult criminal defendants placed under supervision, and therefore respondent cannot make even the threshold showing necessary to establish an equal protection violation.

¶ 23    Finally, respondent argues that, if this court determines that the rules as currently written do not allow for appeals of postdelinquency juvenile supervision orders, then we should modify our rules to make them appealable. This court's rulemaking procedures are set forth in Illinois Supreme Court Rule 3 (eff. Mar. 22, 2010). The typical procedure involves a proposed rule going through this court's rules committee (Ill. S. Ct. R. 3(b)) and, where appropriate, a judicial conference committee or a supreme court committee (Ill. S. Ct. R. 3(d)(1)). When a proposed rule is recommended for adoption, it is submitted for public hearing. Ill. S. Ct. R. 3(d)(1), (3). Rule 3(a)(1) states that one of the reasons that the rulemaking procedures exist is to "provide an opportunity for comments and suggestions by the public, the bench, and the bar." Ill. S. Ct. R. 3(a)(1). This court, however, has reserved the right to dispense with Rule 3's procedures. See Ill. S. Ct. R. 3(a)(2).

¶ 24    Here, respondent argues that this court should dispense with the rulemaking procedures and, in this opinion, modify either Rule 604(b) or 660(a) to allow juveniles to appeal postdelinquency supervision orders. Respondent noted that this is the procedure this court followed in *B.C.P.*, 2013 IL 113908, ¶¶ 15, 17-18, when it modified Rule 660(a) to allow the State to appeal interlocutory suppression orders in juvenile delinquency proceedings. In that case, this court explained that, beginning in 1998, there was a shift in the policy of the Act to make juvenile delinquency proceedings more like adult criminal proceedings. *Id.* ¶ 13. Specifically, the legislature wanted to shift the purpose of the Act from the singular goal of rehabilitation to one that also included protecting the public and " 'holding juvenile offenders accountable for violations of the law.' " *Id.* (quoting *People v. Taylor*, 221 Ill. 2d 157, 167 (2006)). This shift in policy had led this court to hold that juveniles were now entitled to many of the same protections that adult criminals receive, and we explained that this same policy

_____

[6]This section provides in relevant part that, "The court may terminate a continuance under supervision at any time if warranted by the conduct of the minor and the ends of justice or vacate the finding of delinquency or both." 705 ILCS 405/5-615(4) (West 2014).

- 7 -

shift meant that the State has the same interest in appealing interlocutory suppression orders in juvenile cases that it does in criminal cases. *Id.* ¶¶ 14-15. This court believed that the State's argument for why it had the same need for appeal of suppression orders in juvenile cases that it had in criminal cases was sufficiently compelling that this court could modify the rule without first turning the question over to the rules committee. *Id.* ¶ 17.

¶ 25    Respondent contends that the case for allowing juveniles to appeal postdelinquency supervision orders is similarly compelling. Respondent provides a statement from the floor debates when the postdelinquency supervision provision was being considered. Representative Tracy said that the purpose of the amendment was to "create[ ] parity among the way we sentence juveniles and adults." 98th Ill. Gen. Assem., House Proceedings, May 29, 2013, at 96 (statements of Representative Tracy). Thus, respondent argues that juveniles should have the same right to appeal suppression orders that adult criminal defendants have. Respondent also notes that this court has zealously guarded the appellate rights of juveniles by providing for expedited appeals in delinquent minor proceedings. See Ill. S. Ct. R. 660A (eff. July 1, 2013). Finally, respondent argues that an entire class of cases should not be insulated from appellate review, and the fact that the finding of delinquency may eventually be vacated does not make an appeal less worthy. Respondent points out that supervision orders remain part of a juvenile's history and could adversely affect the minor's employment opportunities or be the basis for a harsher punishment if the juvenile is ever convicted in criminal court. Moreover, minors placed on supervision must report to a probation officer and comply with numerous obligations.

¶ 26    The State counters by noting that, unlike the situation in *B.C.P.*, this case involves a statutory change that was enacted *after* the shift in policy of the Act, so it must be presumed that the legislature believed it operated harmoniously with the current policies underlying the Act. Further, in *B.C.P.*, this court was facing a circumstance where the State never had the right to appeal a suppression order at any juncture, thus severely curtailing its ability to prosecute juvenile cases. By contrast, a minor who has a case continued under supervision will either: (1) have the guilty finding vacated and the case dismissed, either at the completion of the period of supervision or before, which would also be the point of an appeal; or (2) fail to comply with supervision, at which point the case would move to adjudication and disposition, and the minor could appeal the final order. In either case, the minor has a path to having the guilty finding vacated. This is quite different from the situation in *B.C.P.* The State also contends that having a case on appeal may work to the minor's detriment in certain circumstances by impeding the trial court's ability to terminate a case or vacate a finding of guilty at any time. Finally, the State contends that the minor's concerns about the possible effects of a supervision order on a minor's criminal history and future employment opportunities are overstated. The State notes that supervision orders entered *prior* to a finding of guilty are also part of a minor's criminal history, and these orders are indisputably not subject to appeal. The State further points out that minors who successfully complete supervision may petition the court to expunge the law enforcement records relating to the event (see 705 ILCS 405/5-915(1)(c) (West 2014)) and also that there is a confidentiality statute protecting juvenile court records (see 705 ILCS 405/1-8 (West 2014)).

¶ 27    After considering the arguments on both sides, we believe that the minor has identified an issue worthy of review by this court's rules committee. However, we decline the minor's invitation to modify the rules in this opinion. Bypassing the rules committee and public hearing

process and amending the rule in an opinion of this court is a power that this court exercises sparingly. In *B.C.P.*, a majority of this court believed that it was clear and obvious that, in light of the shift in policy of the Act to hold juveniles more accountable for their crimes, the State must be allowed the right to appeal suppression orders in juvenile delinquency cases. Here, although the minor has presented a compelling argument, the State has provided a reasonable response to that argument, and this is not a situation where it is clear and obvious that respondents in juvenile delinquency cases must be given the right to appeal postguilt suppression orders. We note that the panel of appellate court judges who decided the case below actually stated that it was wise that this court's rules do not allow for appeal of postguilt supervision orders in delinquent minor cases because of the trial court's ability to vacate the finding of delinquency at any time: "The supreme court rules do not authorize our review, and, wisely so, because review at this point in the case would not be efficient, where the trial court could still vacate its prior conclusion." 2015 IL App (1st) 143181, ¶ 56. Whether or not we ultimately agree with this conclusion, it helps to illustrate the fact that the differences of opinion and competing considerations on this issue are such that this court would benefit from having the issue go through the committee and public hearing process before we decide whether to amend the rule.

¶ 28                                    CONCLUSION

¶ 29       The order continuing respondent's case under supervision, although entered after a finding of guilty, was not a final, appealable order. Moreover, no supreme court rule currently provides for appeal of this type of interlocutory order. The appellate court therefore correctly dismissed the appeal for lack of jurisdiction, and we affirm that court's judgment.

¶ 30       Affirmed.

¶ 31       JUSTICE BURKE, dissenting:

¶ 32       The majority holds that an order of supervision rendered by a circuit court after a finding of guilty in a juvenile delinquency case is an interlocutory order and that, under our current supreme court rules, such orders may not be appealed to the appellate court. I agree with this holding.

¶ 33       The majority also dismisses, however, respondent's request that this court amend its rules to allow for the appeal of orders of supervision so that he may seek appellate review of the order entered against him. While the majority finds respondent's argument in favor of amendment "compelling" (*supra* ¶ 27), it also notes that the State has provided a "reasonable response" to that argument (*id.*). Given the "differences of opinion and competing considerations" offered by the parties (*id.*), the majority concludes that it would be best not to decide whether to amend our rules in this case. Instead, the majority determines that any proposal to amend the rules governing the appeal of supervision orders must go through our rules committee and the public hearing process. In so holding, the majority makes clear that it has not reached any decision as to whether our rules should be amended, but has determined only that the answer to that question will not come in this case. *Id.* The majority therefore applies the current rules and concludes that respondent has no right to appeal.

¶ 34    I disagree with the majority's refusal to answer respondent and decide whether our rules should be amended. The Illinois Constitution of 1970 gives this court the exclusive authority to provide by rule for appeals to the appellate court from other than final judgments of the circuit courts. Ill. Const. 1970, art. VI, § 6; *In re Curtis B.*, 203 Ill. 2d 53, 60 (2002). Pursuant to that authority, and as part of our general rulemaking authority, we have created a procedure, set forth in Illinois Supreme Court Rule 3 (eff. Mar. 22, 2010), for receiving and reviewing proposed rules and rule amendments.

¶ 35    In general, under Rule 3, proposals for rule amendments are submitted to our supreme court rules committee. Proposed amendments which come from members of the bench, the bar or the public are reviewed by the committee and, if warranted, placed on the agenda for a public hearing. If the proposal comes from a supreme court or judicial conference committee, it is automatically placed on the public hearing agenda. After the hearing, the rules committee forwards the proposal to this court with a recommendation to either adopt or not adopt the amendment.

¶ 36    The process outlined in Rule 3 accomplishes two important things that are relevant here. First, it makes it possible for a person or organization interested in changing the rules governing interlocutory appeals to do so outside the context of a case. Second, the public hearing provides an opportunity for adversarial testing of any proposed amendment. The hearing helps ensure that any argument in opposition to a suggested amendment will be heard by this court before we make a decision on adoption.

¶ 37    Although our rules committee and the public hearing process provide one way in which our rules regarding interlocutory appeals may be amended, it is not the only way. A litigant appearing before this court may also request that a supreme court rule governing interlocutory appeals be amended. *In re B.C.P.*, 2013 IL 113908. See also Ill. S. Ct. R. 3(a)(2) (eff. Mar. 22, 2010) (stating that this court may adopt rule changes outside the Rule 3 procedures). In other words, a litigant may request, in an appeal before this court, that we amend our interlocutory appeal rules so that he or she may obtain relief. This is a proper claim to raise in this court, like any other claim. And this is understandable.

¶ 38    The process outlined in Rule 3 ensures that there is adversarial testing of a proposed rule amendment so that both sides, pro and con, have an opportunity to be heard. This is essentially the same process that occurs when a case is argued before this court. In this respect, an opinion from this court that amends a rule governing a matter over which this court has exclusive authority is no different from an opinion that holds a statutory rule unconstitutional or that alters an important common-law rule—we have the authority to address claims that request these changes when they are properly presented in a case before us. Furthermore, once subjected to the adversarial testing that occurs in a case, it is appropriate and necessary that the claims be resolved.

¶ 39    The majority acknowledges that respondent's contention that our rules should be amended is properly before us but, instead of providing an answer to that contention, the majority simply walks away from it, leaving it unresolved. The majority justifies its dismissal of respondent's claim by explaining that the answer to whether our rules should be amended to allow for appeals of supervision orders is not "clear and obvious" (*supra* ¶ 27), and that the State has given a "reasonable response" (*id.*) to respondent's argument in favor of amendment. These "differences of opinion" (*id.*), the majority reasons, mean that we cannot decide whether to

amend our rules in this case but, instead, must defer to our rules committee and the public hearing process. This cannot be correct.

¶ 40    The majority is in essence saying: "Respondent, we recognize that you have raised a compelling argument in favor of amendment, and this contention is properly before us. We also recognize that we have the sole constitutional authority to decide this issue and that your rights and interests are at stake. However, the State has responded reasonably to your argument. Therefore, we are not going to decide the issue. The rules remain unchanged and you lose your case." This makes no sense.

¶ 41    Moreover, the existence of the rules committee and the public hearing process does not, and cannot, trump the right of a litigant to receive an answer to a claim that is properly presented in a case on appeal. The fact that there exists an additional means by which other people may seek a rule amendment does not, in any way, eliminate our responsibility to answer a properly raised claim that *directly affects the rights of a litigant* in a case before us.

¶ 42    Now, perhaps what the majority means to say is that deciding whether to amend our rules is inappropriate in this case, but only at this time, because the record is missing an important fact, or because the parties have overlooked a key legal point in their briefs. There is a suggestion that this is the majority's intent when it states that this court would "benefit from having the issue go through the committee and public hearing process before we decide whether to amend the rule." *Id.*

¶ 43    The majority, however, has failed to identify any deficiency that would justify not answering respondent's claim. There is no factual dispute at issue and the question of whether to amend our rules has been thoroughly briefed by the parties, as the majority itself details at length (see *id.* ¶¶ 24-26). Further, if the majority does, in fact, mean to say only that there is something more that needs to be added to this case before an answer about amending the rules can be given, then the proper disposition is to retain jurisdiction and remand to gather that information, not to deny respondent any relief. By refusing to retain jurisdiction, the majority is saying: "Respondent, you have done nothing wrong and, in fact, have properly raised a compelling argument for relief. However, on the court's own motion, we are going to order an additional hearing. Therefore, you lose your case." Again, this makes no sense.

¶ 44    We have established that a litigant has the right to contend, in a case before this court, that we should amend our rules governing interlocutory appeals. *In re B.C.P.*, 2013 IL 113908. Recognition of that right carries with it the concomitant responsibility of this court to decide the issue. It is fundamentally unfair of the majority to simply refuse to answer a claim—in a juvenile delinquency proceeding no less—when that claim is properly before us, is fully briefed and argued, and is potentially dispositive. This is particularly true when, by the majority's own admission, the claim is "compelling."

¶ 45    In my view, respondent's request that we amend our rules to allow for appeal should be granted. Absent a rule change, minors sentenced to supervision after a finding of guilty will be unable to appeal any aspect of the proceedings, from pretrial suppression orders through sentencing. Even the sufficiency of the State's evidence that brought about the supervision order cannot be contested. In short, as things currently stand, the proceedings entirely escape appellate review, regardless of how clear or prejudicial any errors may be.

¶ 46    Consider, for a moment, just one aspect of what this means. After a finding of guilty, a minor may be sentenced to up to two years of supervision and, as part of the conditions of

supervision, ordered to pay restitution, as respondent was here (*supra* ¶ 4). Denial of the right to appeal means that a minor can be forced to pay hundreds, or even thousands, of dollars in restitution and have no way ever to contest that order, *even if he or she is innocent of all charges*. This may be an "efficient" scheme for the State, as the appellate court below described it (*id.* ¶ 27), but it is hardly fair. The need for a rule change is obvious.

¶ 47  I would amend our rules to allow for the appeal of orders of supervision rendered after a finding of guilty and remand this cause to the appellate court to address respondent's appeal on the merits.

¶ 48  For the foregoing reasons, I respectfully dissent.

¶ 49  JUSTICE FREEMAN joins in this dissent.