2020 IL App (1st) 190602-U

No. 1-19-0602

Third Division
July 2, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| NICOLE BASILE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 L 009521 |
| | ) | |
| PROMETHEUS GLOBAL MEDIA, LLC, | ) | Honorable |
| | ) | Daniel T. Gillespie, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Ellis and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's interlocutory appeal under Illinois Supreme Court Rule 306(a)(9) is dismissed for lack of jurisdiction.

¶ 2    This appeal involves the application of the anti-SLAPP statutes of Illinois and California. The term "SLAPP," which is an acronym for Strategic Lawsuit Against Public Participation, refers to a meritless lawsuit aimed at preventing citizens from exercising their political rights or at punishing them for having done so. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 33. "The traditional SLAPP paradigm involves a large and powerful corporation or entity that sues an individual or

grassroots political organization for defamation, intentional interference with economic advantage, or some other similar tort." *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 13. The goal of a plaintiff in a SLAPP is not necessarily to win the litigation, but rather to chill the speech of the defendant and others through the delay, expense, and distraction associated with defending against a lawsuit. *Sandholm*, 2012 IL 111443, ¶ 34. Thus, although SLAPPs are meritless by definition, SLAPP plaintiffs nevertheless accomplish their goals through the ancillary effects of the lawsuits themselves. *Id.*

¶ 3    Recognizing that existing safeguards against SLAPPs were inadequate to protect defendants from these ancillary effects, many states, including Illinois and California, have enacted special anti-SLAPP statutes. While such legislation varies from state to state, the statutes typically provide a mechanism for early dismissal and the award of attorney's fees to a successful defendant.

¶ 4    Here, plaintiff-appellee, Nicole Basile, filed a complaint against defendant-appellant, Prometheus Global Media, LLC, alleging defamation *per se*, defamation *per quod*, and false light invasion of privacy. Defendant filed a motion to dismiss the complaint, citing California's anti-SLAPP statue. In response, plaintiff argued that Illinois' anti-SLAPP statute, not California's, applied to this case. The circuit court denied the motion to dismiss, reasoning that it did not need to decide which statute applied because defendant was not entitled to relief under either state's law. Defendant petitioned this court for leave to file an interlocutory appeal under Illinois Supreme Court Rule 306(a)(9), which we granted. However, we now decide that we lack jurisdiction to consider defendant's arguments, and we therefore dismiss the appeal.

¶ 5                               I. BACKGROUND

¶ 6     Plaintiff is an Illinois resident who formerly lived and worked in Los Angeles, California as a payroll accountant in the television and film industries. Defendant is a Delaware limited liability company with its principal place of business in New York. The *Hollywood Reporter*, which is wholly owned and published by defendant, is a Los Angeles-based magazine and website that focuses on the television, film, and entertainment industries.

¶ 7     In December 2014, an article entitled "Sony Hack: Studio Security Points to Inside Job" appeared in print edition of *The Hollywood Reporter* and on the magazine's website. The article concerns the highly publicized November 2014 cyber attack in which hackers obtained and leaked confidential data from Sony Pictures Entertainment (Sony), including unreleased films and personal information of Sony employees. This article is the subject of plaintiff's complaint.

¶ 8     After the subheadline that "North Korea might hate a new movie, but studio sources lean toward an ex-employee scenario ***," the article briefly recounts the background of the attack, what information was stolen, and what measures Sony and other studios have taken to enhance their cyber security in its wake. The article then continues with a critical transition paragraph:

"Now the question of who is behind the attack has become a chilling Hollywood whodunit. While the hackers have identified themselves only as Guardians of Peace, emails pointing journalists to allegedly stolen files posted on a site called Pastebin came from a sender named 'Nicole Basile.' A woman by that name is credited on IMDb as an accountant on the studio's 2012 hit film *The Amazing Spider-Man*, and her LinkedIn page says she worked at Sony for one year in 2011. Basile couldn't be reached for comment and the studio declined to confirm if she works or has worked there."

¶ 9 The article next explains the "[i]nitial speculation" that the hack was perpetrated by the government of North Korea in retaliation for an upcoming Sony film involving a CIA plot to assassinate North Korean leader Kim Jong-un. However, the following sentence states, "Inside the studio, though, sources say there is little evidence that North Korea is behind the attack." The article then quotes a cyber security expert who also found it "hard to believe that North Korea [was] the perpetrator," and instead "theorize[d] an employee or ex-employee with administrative access privileges [was] a more likely suspect." The expert reasoned that an outside hacker would have needed months to find such sensitive information within the Sony network and would not have used "such things as Hushmail, Dropbox, and Facebook" because those sites track user information and cooperate with law enforcement.[1] After quoting the expert, the article asserted that the "possibility of a disgruntled employee wreaking havoc is very real," as Sony had laid off hundreds of employees in the year preceding the attack. The article then concluded by detailing the potential financial impact of the leaked films and by noting that Sony was working with the FBI to investigate the attack as a criminal matter.

¶ 10                                    A. The Federal Suit

¶ 11 On November 11, 2015, plaintiff filed a complaint against defendant in the U.S. District Court for the Northern District of Illinois, alleging that the article constituted defamation *per se* and false light invasion of privacy.[2] In particular, plaintiff claimed that the article portrayed her as responsible for the cyber attack through its "overall meaning" and three false and defamatory

---

[1] Although not mentioned in the original article, a follow-up article, which is not the subject of plaintiff's claims, indicates that the hackers used the e-mail address "nicole.basile@hushmail.com."

[2] Plaintiff's federal complaint also named the article's authors as defendants. However, the district court dismissed the authors for lack of personal jurisdiction, plaintiff did not name them in her state court complaint, and they are not parties to this appeal.

statements: (1) that her name was the only alias used by the hackers, (2) that she was a former Sony employee, and (3) that she had "disappeared" and could not be found for comment despite reasonable efforts.

¶ 12 In a written order dated December 7, 2016, the district court granted defendant's motion for judgment on the pleadings and dismissed the complaint. Applying Illinois defamation law, the district court found that the article could not reasonably be construed as imputing criminal activity to plaintiff because it "recognize[d] that the identity of the actual perpetrators are unknown," explained that any of a number of laid-off former Sony employees might be responsible, and did not accuse plaintiff of sending the e-mail to journalists. The district court also found that the article did not disparage plaintiff's ability to perform her job, and was therefore not defamatory *per se*. The district court further stated that, even if the article had been defamatory *per se*, plaintiff would still not have been entitled to relief because the article was capable of a reasonable innocent construction. Finally, the court rejected plaintiff's false light claim because it was based on the same statements as her defamation claim.

¶ 13 On appeal, however, it was discovered that complete diversity did not exist between the parties because one of defendant's members was a citizen of Illinois. Accordingly, the Seventh Circuit remanded to the District Court with instructions to dismiss the case for lack of jurisdiction.

¶ 14                                    B. The State Suit

¶ 15 On October 20, 2017, plaintiff filed the instant complaint in the Circuit Court of Cook County pursuant to section 5/13-217 of the Code of Civil Procedure (Code) (735 ILCS 5/13-217 (West 2016)), which allows a plaintiff to commence a new action in the circuit court within a year of a dismissal in a district court for lack of jurisdiction. The state court complaint mirrored the

federal court complaint with respect to the claims of defamation *per se* and false light invasion of privacy, but also added a claim of defamation *per quod* based on plaintiff's contentions that the article was defamatory on its face and that she suffered special damages in the form of lost income and business opportunities as a result.

¶ 16    Defendant filed a motion to dismiss the complaint pursuant to section 2-615 of the Code, arguing that the article was "not defamatory as a matter of law" and was capable of a reasonable innocent construction. Defendant further contended that plaintiff's claim of defamation *per quod* should also be dismissed because she did not allege special damages with sufficient particularity. Lastly, defendant maintained that plaintiff's false light claim failed because it was based on the same nonactionable statements as her defamation claims.

¶ 17    In response, plaintiff argued that the article was defamatory *per se* because it conveyed that the hacker was a disgruntled ex-Sony-employee while mentioning only her—by name—as an ex-employee connected to the stolen data. Plaintiff also maintained that her claim of defamation *per quod* remained viable because the article was defamatory on its face and she pled special damages.

¶ 18    Following a hearing, the circuit court denied defendant's section 2-615 motion. In so ruling, the court stated that the mention of plaintiff's name in relation to the stolen information was "the punch line" of the article and was "arguably colorfully a defamatory statement" that amounted to defamation *per se*. With respect to the plaintiff's claim of defamation *per quod*, the court reiterated that the article was defamatory on its face and also found that plaintiff adequately pled special damages where she alleged, in the court's words, an "inability to get hired in [the film industry] and lost wages as a result."

¶ 19    Defendant next filed a motion to dismiss the complaint pursuant to section 2-619 of the Code, arguing that California's anti-SLAPP statute (Cal. Proc. Code § 425.61(b)(1); 735 ILCS 110/15 (West 2016)), was "an affirmative matter which warrant[ed] dismissal of the Complaint with prejudice as a matter of law." Specifically, defendant contended that California's anti-SLAPP statute should apply to this case because, as the article was primarily researched, written, edited, and published out of *The Hollywood Reporter's* Los Angeles office, California had the most significant contacts and strongest interest in having its anti-SLAPP law applied. Defendant further asserted that it was entitled to an early dismissal under California's anti-SLAPP statute because plaintiff was unable to show a reasonable probability of success on the merits. In particular, defendant maintained that plaintiff's claims were destined to fail under Illinois defamation law because the article was not defamatory and was capable of a reasonable innocent construction.

¶ 20    Plaintiff responded that Illinois' anti-SLAPP statute, the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2016)), should apply because the case was brought in an Illinois court, both parties were citizens of Illinois, and the injury was "largely realized in Illinois." Plaintiff also argued that, even if the California anti-SLAPP statute were applicable, her complaint would still survive dismissal because the court had already determined that she pled a *prima facie* case of defamation by denying defendant's section 2-615 motion.

¶ 21    At a hearing on the section 2-619 motion, the court instructed defendant to provide additional briefing as to whether there was a conflict of law between the California and Illinois anti-SLAPP statutes. In its supplemental brief, defendant argued that a choice of law analysis was required because the California statute was "much broader in scope" than its Illinois counterpart. In particular, defendant noted that California's statute applies to all speech "in connection with a

public issue," whereas Illinois' statute applies only to speech aimed at procuring a favorable governmental action or outcome. See Cal. Proc. Code § 425.61(b)(1) (West 2016); 735 ILCS 110/15 (West 2016).

¶ 22     In response, plaintiff argued that the court should apply the Illinois statute because "California's anti-SLAPP law is plainly procedural, and not substantive." Specifically, plaintiff contended that the California statute merely provided a procedural mechanism through which the case could be dismissed at an early stage if it were meritless as a matter of substantive Illinois defamation law.

¶ 23     After receiving the supplemental briefing, the circuit court ruled that it need not conduct a choice of law analysis because "under either statute, [d]efendant's 2-619 motion must be denied." The court explained that defendant could not prevail under Illinois' anti-SLAPP statute because the article was not related to defendant's participation in government and could not reasonably be construed as nondefamatory. In line with its ruling on defendant's section 2-615 motion, the court stated that "the only reasonable interpretation an ordinary reader could be left with is that plaintiff participated in the cyber-attack" because the article claimed that (1) the attack was "likely committed by an ex-employee," (2) plaintiff was an ex-employee, and (3) the stolen information "emanated from Nicole Basile." Similarly, the court further held that, although the article was the kind of speech covered by the "broader" California anti-SLAPP statute, that statute would not entitle defendant to an early dismissal because plaintiff had established a *prima facie* case of defamation and a reasonable probability of success on the merits. Accordingly, the court denied defendant's motion to dismiss without proceeding any further with a choice of law analysis. Over

plaintiff's objection, this court granted defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(9) (eff. Nov. 1, 2017).

¶ 24                                    II. ANALYSIS

¶ 25                                    A. Jurisdiction

¶ 26     Before we can reach the merits of defendant's arguments, we must consider the scope of our jurisdiction over this case. See *Xcel Supply, LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 26 ("An appellate court always has an independent duty to consider its own jurisdiction and dismiss an appeal if jurisdiction is lacking."). This court's jurisdiction is generally limited to appeals from final judgments, unless the ruling to be reviewed falls within one of the exceptions for interlocutory appeals specified by our supreme court. *Inland Commercial Property Management, Inc. v. HOB I Holding Corp.*, 2015 IL App (1st) 141051, ¶ 17. The Illinois Constitution grants our supreme court the exclusive and final authority to prescribe the scope of interlocutory appeals. *People v. Holmes*, 235 Ill. 2d 59, 66 (2009). Thus, "[i]f a supreme court rule does not grant the right to appeal from a nonfinal judgement, then there is no right to an interlocutory appeal and the appellate court does not have jurisdiction to hear that appeal." *Mund v. Brown*, 393 Ill. App. 3d 944, 997 (2009). The scope of a supreme court rule is a question of law, which we review *de novo*. *McCarthy v. Taylor*, 2019 IL 123622, ¶ 17.

¶ 27     Here, defendant petitioned for, and was granted, a permissive interlocutory appeal under Supreme Court Rule 306(a)(9), which applies only to appeals "from an order of the circuit court denying a motion to dispose under the Citizen Participation Act." Defendant maintains that this rule grants us jurisdiction to consider his arguments involving California's anti-SLAPP statute because the circuit court denied the underlying motion to dismiss based in part on a finding that

defendant would not be entitled to an early dismissal under the Citizen Participation Act. In interpreting the scope of a supreme court rule, we employ the same principles that govern the interpretation of statutes. *McCarthy*, 2019 IL 123622, ¶ 17. As with statutory interpretation, the starting point in construing a supreme court rule is the plain language of the rule itself. *In re Michael D.*, 2015 IL 119178, ¶ 9. When the language of a rule is clear, it must be given effect without resort to other tools of interpretation. *Id.*

¶ 28    The language of Rule 306(a)(9) plainly and clearly requires a defendant to have filed "a motion to dispose under the Citizen Participation Act." Defendant's motion to dismiss here makes no reference to the Citizen Participation Act, and instead relies solely on the protections of California law. Indeed, defendant's position below—which it maintains on appeal—was that the Citizen Participation Act has no application to this case. Thus, defendant's motion to dismiss was not "a motion to dispose under the Citizen Participation Act" within the meaning of Rule 306(a)(9). The circuit court's ruling on the motion therefore falls outside of the limited scope of the rule.

¶ 29    Moreover, the record shows that the circuit court's consideration of the Citizen Participation Act was in no way crucial to its ruling on defendant's motion. Rather, the circuit court interpreted the Citizen Participation Act only in addressing the threshold matter of whether California law had any application to this case. The circuit court ultimately determined that it did not need to decide whether to apply the Illinois or California anti-SLAPP statute because defendant's motion would be unsuccessful under either state's law. See *Townsend v. Sears, Roebuck, & Co.*, 227 Ill. 2d 147, 155 (2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome."). Thus, even assuming, *arguendo*, that California law applied, defendant's motion would still have been denied. The circuit court's

choice-of-law analysis in no way transformed defendant's motion into one filed "under the Citizen Participation Act" for purposes of Rule 306(a)(9). As such, the court's ruling clearly falls outside the ambit of the rule, and we lack jurisdiction to review it.

¶ 30    Nor are we persuaded by defendant's argument that "[a]n appeal at this juncture is consistent with the salutary policy of determining the merits of defamation cases as early in the litigation process as the circumstances allow." As previously explained, our jurisdiction in this case extends only to the narrow limits set forth in Rule 306(a)(9), namely a denial of a motion brought under the Citizen Participation Act. The rules governing permissive interlocutory appeals must be strictly construed. *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 258 (2002).

¶ 31    Furthermore, even if we were to ignore the plain language of the rule, we cannot say that our supreme court intended to allow interlocutory appeals involving other states' anti-SLAPP statutes. Before the addition of Rule 306(a)(9), there was significant uncertainty as to whether the denial of a motion under the Citizen Participation Act was subject to interlocutory review. See *Ryan*, 2012 IL App (1st) 120005, ¶ 9 n.1. Our supreme court clarified the issue in 2011 by amending Rule 306 to explicitly allow for such appeals. However, our supreme court did not include a similar provision for other states' anti-SLAPP statutes, even though many states— including California—had already enacted anti-SLAPP legislation. See *Sandholm*, 2012 IL 111443, ¶ 33(noting that more than 20 states had enacted anti-SLAPP statutes by August 2007). Our supreme court has also not expanded the scope of Rule 306(a)(9) in the over nine years since it was added. Notwithstanding the policies expressed by other states' legislatures, our supreme court's exclusion of foreign anti-SLAPP statutes from the rules governing interlocutory appeals strongly suggests that our supreme court did not intend for motions under those statutes to be

subject to interlocutory appeals. See *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 152 (2007) ("[T]he inference that all omissions should be understood as exclusions stands despite the lack of any negative words of limitation."). Defendant's policy argument is therefore unavailing.

¶ 32                                         III. Conclusion

¶ 33    In sum, defendant's arguments regarding California law do not fall within the narrow limits of Rule 306(a)(9), which applies only to the Citizen Participation Act. Accordingly, we lack jurisdiction to consider the arguments in an interlocutory appeal under the rule. This appeal is therefore dismissed.

¶ 34    Dismissed.