EMMETT O'CALLAGHAN, Plaintiff-Appellant, v. RETIREMENT BOARD OF FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee.

First District (4th Division)    No. 1—98—0068

Opinion filed December 17, 1998.—Rehearing denied January 13, 1999.

580

Martin O. Holland, of Chicago, for appellant.

Fagel & Haber, of Chicago (Lawrence T. Krulewich, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Emmett O'Callaghan, appeals from the circuit court's judgment affirming defendant Retirement Board of Firemen's Annuity and Benefit Fund of Chicago's (Board's) denial of his applications for duty disability benefits and ordinary disability benefits under sections 6—151 and 6—152 of the Illinois Pension Code (Code) (40 ILCS 5/6—151, 6—152 (West 1996)), respectively. The plaintiff

contends that (1) the Board's decisions were against the manifest weight of the evidence, (2) the Board erroneously failed to apply the language of sections 6—151 and 6—152 of the Code, and (3) the Board denied the plaintiff due process and a fair hearing. For the reasons that follow, we reverse and remand this cause for further proceedings.

The plaintiff was 49 years old when he was hired by the Chicago fire department (Department) as a firefighter on December 1, 1994. Upon hire, he began contributing a percentage of his salary to the Board for duty disability benefits and ordinary disability benefits.

In December 1994, the plaintiff began a three-month training course that the Department requires all firefighter candidates to complete before they are released to work in the fire stations. The plaintiff suffered an attack of ulcerative colitis in January 1995 and did not complete the training course. However, the plaintiff remained on the Department payroll continuously throughout 1995 and enrolled in his second firefighter candidate class in October of that year. Three weeks before graduation of the candidate class, the plaintiff fell while performing one of the training drills and tore the cartilage in his right knee. He was hospitalized and did not complete the course.

Dr. Hugh Russell, the Department's medical director, referred the plaintiff to Dr. Preston Wolin for examination. On January 31, 1996, Dr. Wolin performed arthroscopic surgery on the plaintiff's right knee. He reported to Dr. Russell in a letter dated February 13, 1996, that the plaintiff was progressing well and that he could return to the fire-fighter training academy in one month.

At Dr. Russell's direction, the plaintiff began "work conditioning" at HealthSouth Work Center in April 1996. The record contains a "Notification of Change of Medical Injury Lay-Up Status" report, which states that the plaintiff's "duty injury has resolved on 8-26-96 per Hugh Russell, M.D." However, the plaintiff was never returned to work. On October 16, 1996, Dr. Russell removed the plaintiff from the Department payroll.

On October 23, 1996, the plaintiff filed an application with the Board for duty disability benefits pursuant to section 6—151 of the Code (40 ILCS 5/6—151 (West 1996)). The plaintiff claimed that he became disabled as the result of an act of duty when he injured his knee while taking part in a training drill as a candidate firefighter.

After an administrative hearing on December 18, 1996, the Board denied the plaintiff's application for duty disability benefits. The plaintiff filed a complaint for administrative review on January 23, 1997.

While the plaintiff's complaint for administrative review of the Board's decision was pending, the plaintiff filed a second application

with the Board seeking ordinary disability benefits on June 5, 1997. This application was also based on the injury he sustained as a candidate firefighter. After a hearing on August 20, 1997, the Board denied the plaintiff's application for ordinary disability benefits.

The trial court allowed the plaintiff to amend his complaint for review of the Board's denial of his application for duty disability benefits in order to add a count for review of the Board's denial of his claim for ordinary disability benefits. The trial court affirmed the Board's denial of both duty and ordinary disability benefits, and this appeal followed.

■ We first address the plaintiff's application for duty disability benefits. Section 6—151 of the Code provides in pertinent part that "[a]n active fireman who is or becomes disabled on or after the effective date as the result of a specific injury, or of cumulative injuries, or of specific sickness incurred in or resulting from an act or acts of duty, shall have the right to receive duty disability benefit during any period of such disability for which he does not receive or have a right to receive salary." 40 ILCS 5/6—151 (West 1996). The Code defines an "Act of Duty" as:

"Any act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department, or any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person." 40 ILCS 5/6—110 (West 1996).

■ The Board denied the plaintiff duty disability benefits "for the reason that there is not sufficient evidence to substantiate that you are disabled *as a result of an act or acts of duty.*" (Emphasis added.) Thus, the Board's decision apparently was based on its determination that firefighter candidate drills do not constitute acts of duty for purposes of section 6—110 of the Code. The construction of a statute is a question of law, and the administrative agency's interpretation is not binding on this court. See *City of Chicago v. Illinois Commerce Comm'n*, 294 Ill. App. 3d 129, 689 N.E.2d 241 (1997). We review such issues on a *de novo* basis. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).

The Board contends that the words "having for its direct purpose the saving of life or property of another person" modifies each of the preceding clauses in the "act of duty" definition and, therefore, a claimant must prove that his disability arose from an act having for its direct purpose the saving of life or property of another. The Board argues that training at the firefighter academy has, at best, only an indirect purpose of saving life or property. We disagree.

■ We conclude that the word "or" in section 6—110 of the Code,

a disjunctive particle, requires that the subsections which it connects should be read separately from one another. It has long been held that the word "or," as used in its ordinary sense, marks an alternative indicating the various members of the sentence which it connects are to be taken separately. *People v. Vraniak*, 5 Ill. 2d 384, 389, 125 N.E.2d 513 (1955), *cert denied*, 349 U.S. 963, 99 L. Ed. 2d 1285, 75 S. Ct. 894 (1955). When this rule is applied to the statute at hand, "having for its direct purpose the saving of the life or property of another person" only modifies the preceding clause "any act performed by an active fireman while on duty." Accordingly, we believe that the legislative intent was to define an "act of duty" as: (1) any act imposed on an active fireman by the ordinances of a city; (2) any act imposed on an active fireman by the rules or regulations of a city's fire department; or (3) any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person. Since the plaintiff here was injured while performing an act imposed on him by the rules and regulations of the Department, he is not required to prove that the act also had for its direct purpose the saving of the life or property of another person.

Moreover, in *Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 263 Ill. App. 3d 539, 543, 640 N.E.2d 1246 (1994), the reviewing court noted that article 6 of the Code is intended to serve an equivalent purpose to the objectives of workers' compensation (see also *Mitsuuchi v. City of Chicago*, 125 Ill. 2d 489, 493-94, 532 N.E.2d 830 (1988)), and the terms of the statute are to be liberally construed in favor of the applicant to serve its beneficent purpose. *Wilfert*, 263 Ill. App. 3d at 543. The court reasoned that, while the term "act of duty" by itself has a specific statutory definition (40 ILCS 5/6—110 (West 1996)), the broader phrase "incurred in or resulting from an act or acts of duty" that appears in section 6—151 of the Code (40 ILCS 5/6—151 (West 1996)) should be interpreted similarly to the general test of "arising out of and in the course of the employment" from the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)). *Wilfert*, 263 Ill. App. 3d at 544.

■ In the instant case, the record is undisputed that the Department hired the plaintiff on December 1, 1994, and that he was an active fireman at the time of his injury. It is also undisputed that the Department regulations require all candidate firefighters to complete the training course before obtaining a position at a fire station. Since the plaintiff was injured while performing acts that he was directed to complete as an employee of the Department, we conclude that the knee injury he sustained was an act "arising out of and in the course of the employment" and that the Board erred in determining that the

plaintiff was not disabled as a result of an act of duty under section 6—110 of the Code. We therefore reverse the circuit court's decision affirming the Board's denial of the plaintiff's application for duty disability benefits, and we remand this cause to the Board for a new hearing restricted to the question of whether the petitioner is disabled.

■ We now turn our attention to the plaintiff's application for ordinary disability benefits. Section 6—152 of the Code provides that "[a]ny fireman *** who becomes disabled after the effective date as the result of any cause other than the performance of an act or acts of duty, shall have a right to receive ordinary disability benefit during any period or periods of such disability." 40 ILCS 5/6—152 (West 1996). The plaintiff argues that the circuit court's decision affirming the Board's denial of such benefits must be reversed because he suffered certain procedural abuses during the Board hearing.

At the Board's request, the plaintiff saw Dr. Motto, a physician/consultant for the Board, on July 23, 1997. Dr. Motto prepared a letter to the Board that same day which contained the following pertinent comments:

> "(The plaintiff) cannot do anywhere near what he could do prior to the injury. *** He can climb but very slowing [sic] and has no where near the dexterity needed for firefighting. ***
> ***
> Comment: (The plaintiff) is a 51 year old man who has permanent right knee injuries secondary to cartilage damage with is [sic] post-Arthroscopic surgery. He is disabled and cannot fight fires."

On August 5, 1997, the plaintiff received a notice that his ordinary disability hearing was scheduled for August 20, 1997. The notice stated that it was not necessary for the plaintiff to appear in person, and he elected not to do so.

The transcript from the August 20 hearing reflects that Dr. Motto was questioned by the Board's attorney and testified as follows in pertinent part:

> "Q. *** You conclude your letter by saying (the plaintiff is) disabled and cannot fight fires. Is he disabled because of the injury he claims to have sustained to his knee?
> A. Partially.
> Q. What is the reason he can't do fire duty?
> A. That his general physical condition is not as good as it should be. As reviewing [sic] his previous medical record was the case also.
> Q. Doctor, isn't it fair to say the real reason he can't do fire duties any more is because he's deconditioned?
> A. I believe so, yes.
> Q. You're not able to give an opinion that he is disabled because

of the injury he sustained to his knee; that is basically what he told you?

A. Correct.

***

Q. Doctor, if you look at Group Board Exhibit 6-D it is a letter to Doctor Russell from Doctor Preston M. Wolin dated March 15, 1996. *** The second to the last sentence indicates 'the patient may return to full active duty as a firefighter as of this date'. Do you have any objective evidence to counteract that diagnosis?

A. No, I do not. No.

***

Q. It is your feeling that he can't return to fire duty?

A. It says he can. 'May return to full active fire duty'.

Q. Do you agree with that statement.

A. You know, we have to go into executive session on this one. I want to talk to you about this."

At this point, the transcript indicates that the Board went into executive session with Dr. Motto. The Board then resumed questioning Dr. Motto about Dr. Wolin's March 15, 1996, letter to Dr. Russell:

"Q. That letter says he may return to full active duty as a firefighter as of that day. Do you interpret that as meaning that his problems had resolved?

A. Yes.

Q. Do you agree that his knee problems had resolved?

A. Yes.

***

Q. Now referring you then to his general state of condition can he perform as a firefighter?

A. No.

Q. Does that have anything to do with his knee condition?

A. Not directly, no.

Q. What is the reason he can't perform as a firefighter?

A. He has medical problems. He has not really been working out and even when he presented previously he was having difficulty prior [sic].

Q. He's deconditioned is that what you are trying to say?

A. Yes."

The Board denied the plaintiff's application for ordinary disability benefits, finding he was not disabled due to any cause covered under section 6—152 of the Code.

On October 24, 1997, the plaintiff filed a memorandum of law in support of his complaint for administrative review of the Board's denial of his ordinary disability benefits and attached his affidavit stating that: (1) he met with Dr. Motto as requested by the Board on

July 23, 1997; (2) Dr. Motto inquired about his current well-being and activities as related to his knee injury; (3) Dr. Motto physically examined both of his knees; (4) Dr. Motto informed him that he need not be present at the Board hearing because he was disabled and not capable of fighting fires; and (5) Dr. Motto stated that he would submit his opinion to the Board. The trial court affirmed the Board's denial of ordinary disability benefits. The plaintiff argues on appeal that he was deceived by the actions of the Board and Dr. Motto and, consequently, was denied his rights to due process and a fair hearing on his ordinary disability claim.

■ An administrative proceeding is governed by the fundamental principles and requirements of due process of law. *Jackson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 293 Ill. App. 3d 694, 699, 688 N.E.2d 782 (1997). A basic requirement of due process is that an administrative proceeding be conducted by a fair and impartial tribunal. *Polk v. Board of Trustees of the Police Pension Fund*, 253 Ill. App. 3d 525, 541, 624 N.E.2d 1366 (1993).

■ The transcript from the August 20, 1997, hearing provides ample support for the plaintiff's contentions. When the Board's attorney initially asked whether the plaintiff was disabled because of his knee injury, Dr. Motto replied "Partially." The Board's attorney asked why the plaintiff could not do fire duty, to which Dr. Motto replied that the plaintiff's physical condition had declined. The Board's attorney then suggested that the "real reason" the plaintiff could not perform fire duties was because he was deconditioned, to which Dr. Motto said "I believe so." When asked whether the plaintiff could return to full active fire duty, Dr. Motto, who is not a Board member, requested an executive session.

After the executive session, Dr. Motto testified unequivocally that the plaintiff's knee problems had resolved but that he could not perform as a firefighter because he "has not really been working out" and was "deconditioned." Dr. Motto's testimony, in particular that which was elicited by the Board's attorney after the executive session, completely contradicted both his July 23 letter to the Board and his assurances to the plaintiff regarding the content of his future testimony at the hearing. These procedural peculiarities lead us to conclude that the plaintiff was deprived of his right to a fair hearing. Accordingly, we reverse the circuit court's decision affirming the Board's denial of ordinary disability benefits, and we remand this cause for a new administrative hearing on the plaintiff's petition.

For the foregoing reasons, we reverse the judgment of the circuit

court of Cook County, and we remand this cause for further proceedings.

Reversed and remanded.

McNAMARA and WOLFSON, JJ., concur.