# Illinois Official Reports

## Appellate Court

---

### *Frisby v. Village of Bolingbrook Firefighters' Pension Fund*,
### 2018 IL App (2d) 180218

---

| | |
|---|---|
| Appellate Court Caption | BETHANY FOY FRISBY, Plaintiff-Appellee, v. THE VILLAGE OF BOLINGBROOK FIREFIGHTERS' PENSION FUND, THE BOARD OF TRUSTEES OF THE VILLAGE OF BOLINGBROOK FIREFIGHTERS' PENSION FUND, and THE VILLAGE OF BOLINGBROOK, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-18-0218 |
| Filed | December 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 17-MR-667; the Hon. Paul M. Fullerton, Judge, presiding. |
| Judgment | Reversed.<br>Board decision confirmed. |
| Counsel on Appeal | Jeffrey A. Goodloe, of Puchalski Goodloe Marzullo, LLP, of Northbrook, for appellants Village of Bolingbrook Firefighters' Pension Fund and Board of Trustees of the Village of Bolingbrook Firefighters' Pension Fund.<br><br>Kenneth M. Florey and M. Neal Smith, of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Bolingbrook, for other appellant.<br><br>Thomas W. Duda, of Palatine, for appellee. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Burke and Hudson concurred in the judgment and opinion.


**OPINION**

¶ 1        After a disabling injury, plaintiff, Bethany Foy Frisby, a firefighter for defendant the Village of Bolingbrook (Village), applied for a line-of-duty disability pension or, alternatively, a not-on-duty pension. Defendant the Board of Trustees of the Village of Bolingbrook Firefighters' Pension Fund (Board) denied plaintiff's request for a line-of-duty pension but granted her request for a not-on-duty pension. Plaintiff sought review in the trial court, which found that she was entitled to line-of-duty benefits and reversed the Board's decision. Defendants, the Village of Bolingbrook Firefighters' Pension Fund, the Board, and the Village, appeal. For the following reasons, we reverse the trial court's judgment and confirm the Board's decision.

¶ 2                          I. BACKGROUND
¶ 3        The underlying facts are uncontested. Since 2006, plaintiff has been a full-time firefighter for the Village. Pursuant to the relevant collective bargaining agreement (CBA), plaintiff worked 24-hour shifts, followed by 48 hours off. Her workday began at 7 a.m. and ended the following day at 7 a.m.

¶ 4        On December 28, 2013, plaintiff drove her own vehicle to work and parked in the fire-station parking lot. She arrived at 6:40 a.m. Plaintiff kept her firefighter uniform at the fire station, as was allowed but not required, and she planned to change before commencing her shift. As plaintiff exited her vehicle, she slipped on black ice. Her left shoulder struck her vehicle's running board and the ground. Plaintiff immediately felt throbbing and pain in her shoulder, but she entered the station to prepare for her shift. While at work, plaintiff performed an ambulance check, installed gear lockers, and drove an ambulance on a fire call. Plaintiff felt pain in her left arm and told her partner, who then notified plaintiff's supervisor. The supervisor ordered plaintiff to go to the emergency room, and plaintiff left her shift to do so.

¶ 5        Ultimately, after a period of treatment, plaintiff applied for a line-of-duty disability pension or, alternatively, a not-on-duty pension. On June 21, 2016, and January 26, 2017, the Board held hearings on plaintiff's application. At the hearings, plaintiff presented evidence concerning her visits to various treatment providers, multiple doctors' opinions, and reports concerning surgery, therapy, and other treatments plaintiff received. We do not recount that evidence here, as it is now *undisputed* that (1) plaintiff injured her shoulder when she fell in the fire-station parking lot and (2) plaintiff is permanently disabled within the meaning of the Illinois Pension Code (40 ILCS 5/4-112 (West 2012)).

¶ 6        Additional evidence plaintiff introduced at the hearings included her performance reviews, which routinely assessed her punctuality and praised her consistent habit of being early to work and ready to start her shift on time. Further, plaintiff introduced a February 2, 2015, e-mail from the Village's Superintendent of Public Safety, Tom Ross, which was sent to all firefighters and summarized his reflections and observations from recent station visits,

including: "If you're not early—you're late. I appreciate you looking out for each other at shift changes."

¶ 7    On January 26, 2017, the Board denied plaintiff's request for a line-of-duty pension (65% of her final salary) but granted her request for a not-on-duty pension (50% of her final salary) (*id.* § 4-111). On April 17, 2017, the Board issued its written decision, explaining that it found that plaintiff was not injured while performing an "act of duty," as that expression is defined in the Pension Code. Specifically, it found that, when she fell at 6:40 a.m., plaintiff was not yet on duty, as her shift did not commence until 7 a.m., and, further, that she was not performing an act for the direct purpose of saving the life or property of another. The Board also found that plaintiff was not on an assignment approved by the chief and related to fire protection of the Village, nor was she performing an act imposed by any Village ordinance or fire-department rule or regulation. "[Plaintiff] was merely getting out of her personal vehicle [20] minutes before her shift started when she slipped on a patch of ice and fell." The Board rejected plaintiff's argument that Ross's statement in his e-mail, "If you're not early—you're late," constituted a formal rule or regulation imposing a requirement that firefighters show up early for their shifts:

> "First, it is axiomatic that if a person is not early or exactly on time for work then that person is late. The email does not impose a rule or regulation requiring a person to show up early, but rather encourages a person to be on time in accordance with the provision set forth in the CBA. Superintendent Ross cannot, through an email, unilaterally change the terms and conditions of the firefighters' employment as set forth in the CBA. Additionally, Superintendent Ross' email simply set forth his 'take-aways' or observations since becoming superintendent. The Pension Board notes that Superintendent Ross' email also states that firefighters '. . . enjoy your job—try to have a little fun at work.' If the Pension Board accepts [plaintiff's] argument that the email is a rule or regulation of the Fire Department, then getting injured while trying to 'have a little fun at work' would constitute an 'act of duty.' Additionally, if the Pension Board accepts [plaintiff's] argument then countless off-duty activities preceding a firefighter's shift that resulted in injuries could potentially constitute 'acts of duty' for purposes of line[-]of[-]duty disability pension claims. The Pension Board rejects these expansive arguments."

¶ 8    Plaintiff sought administrative review in the trial court. On January 3, 2018, the court reversed the Board's decision. The court determined first that the sole issue presented was whether plaintiff's injury occurred while she was performing an "act of duty" under the fire department's rules and regulations. The court noted that "common sense dictates that in order to be 'fully prepared, ready, and in uniform' at the beginning of their shift, one would have to arrive to work, park a vehicle and walk into work *prior* to the beginning of the shift." (Emphasis in original.) The court concluded that "[t]here must be some reasonableness to the time for arriving to work in order to be fully prepared and report for work at 7:00 a.m.—a requirement of [plaintiff's] job." The court took issue with defendants' failure to agree that, if plaintiff's injury had occurred *one minute* prior to her shift, she would be entitled to line-of-duty benefits. "If [plaintiff] was required to be fully prepared, ready and in uniform to begin her shift promptly at 7:00 a.m., yet also allowed to keep her uniform at the fire station, [plaintiff] obviously had to arrive within a reasonable time prior to the beginning of her shift to avoid violating a department rule or regulation."

¶ 9 The court found that regular performance reviews evaluating plaintiff's attendance and punctuality could create rules or regulations within the meaning of the Pension Code because they assessed her compliance with the fire department's express written rules and regulations. The court then explained that, while there is a dearth of case law on this specific issue concerning a firefighter's pension under the Pension Code, courts can look to the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2016)) for aid in interpreting the Pension Code and that courts interpreting the Workers' Compensation Act "have consistently understood that employment contemplates not only the scheduled time working, but also a reasonable time before beginning and after concluding scheduled work hours." Thus, the court concluded plaintiff was attempting to comply with rules and regulations that she be prepared to begin her shift promptly at 7 a.m. and, as there was no way to comply with that requirement other than to show up at work at a reasonable time to prepare, she was entitled to line-of-duty benefits.

¶ 10 On March 12, 2018, the court denied defendants' motion to reconsider. Defendants appeal.

¶ 11 II. ANALYSIS

¶ 12 A. Standard of Review

¶ 13 In an appeal for administrative review, we review the decision of the administrative agency, not the decision of the trial court, and only the record of the administrative proceedings. *Lipscomb v. Housing Authority*, 2015 IL App (1st) 142793, ¶¶ 11-16. "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Factual findings are reviewed under the manifest-weight-of-the-evidence standard, whereas purely legal questions demand *de novo* review. *Lipscomb*, 2015 IL App (1st) 142793, ¶ 16. However, where an agency's decision involves a mixed question of law and fact, we will not reverse unless the decision is clearly erroneous, *i.e.*, unless we are left with a definite and firm conviction that a mistake has been committed. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). "Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Id.*

¶ 14 On appeal, the parties disagree on the appropriate standard of review, and indeed, both cite cases supporting their respective positions. For example, urging us to apply the clearly erroneous standard, defendants cite *Howe v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 2015 IL App (1st) 141350, ¶ 47, where the court applied that standard when the facts were undisputed and the question was whether a firefighter's injury resulted from an act of duty. In contrast, however, plaintiff urges us to apply *de novo* review, citing *Martin v. Board of Trustees of the Police Pension Fund*, 2017 IL App (5th) 160344, ¶ 12, where the court applied that standard when the facts were undisputed and the issue was whether a police officer was injured while performing an act of duty. The *Martin* court determined that the issue turned on the interpretation of "act of duty" under the Pension Code, a question of law to be reviewed *de novo*.

¶ 15    Here, we believe that the clearly erroneous standard applies. We note that, although the facts might now be undisputed, they were not initially; the Board was tasked with considering whether plaintiff's injury occurred when she fell in the parking lot or when installing lockers or performing other tasks during her shift. After weighing the evidence, the Board found that the injury occurred when she fell in the parking lot at 6:40 a.m. That finding is *now* undisputed, and the remaining question is whether those circumstances surrounding plaintiff's injury satisfy the statutory standard, *i.e.*, whether the injury occurred during the performance of an "act of duty," as defined by the Pension Code, such that a line-of-duty pension is appropriate. In our view, this is a "textbook" example of an issue warranting the clearly erroneous standard. However, we note that, although we apply the clearly erroneous standard, our decision here does not hinge on the standard of review, for we would also reverse the trial court and affirm the Board under the *de novo* standard.

¶ 16                                B. Line-of-Duty Pensions

¶ 17    As noted, we are asked to consider whether the Board correctly determined that plaintiff's fall in the parking lot prior to her shift did *not* warrant a line-of-duty pension. The Pension Code provides that a firefighter is entitled to a line-of-duty pension if he or she is injured and rendered disabled from performing an "act of duty." 40 ILCS 5/4-110 (West 2012). The Pension Code further defines an "act of duty" as follows:

> "Any act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department, or any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person." *Id.* § 6-110.

¶ 18    Defendants argue that the Board correctly found that, when she fell in the parking lot, plaintiff was not engaged in an act of duty as defined by the Pension Code. Defendants note that plaintiff was not on duty, as defined by the Pension Code,[1] and that her shift did not start until 20 minutes after her accident. Further, defendants argue that no Village ordinances or fire-department rules or regulations required plaintiff to arrive at the fire station 20 minutes prior to her shift, drive her vehicle there, park in the station's parking lot, or don her uniform at the station. Defendants argue that the expectation that plaintiff be punctual for work, as reflected in Ross's colloquial e-mail or as assessed in her performance reviews, did not prescribe *how* she must accomplish punctuality. Defendants note that plaintiff would have been just as punctual if she had kept her uniform at home, obtained a ride to the fire station, and walked inside without crossing the parking lot. Indeed, defendants argue, there are a myriad of discretionary decisions that a firefighter might make prior to the start of his or her shift that might contribute to attendance and punctuality, and interpreting "act of duty" as including those innumerable acts among those "imposed" upon the firefighter would extend the definition too far. Defendants also note that plaintiff was not engaged in any act having for its direct purpose the saving of someone's life or property. Her shift had not started, she was not on any assignment, and she slipped when exiting her personal vehicle in the fire-station parking lot.

---

[1]We note that a firefighter is considered "on duty" while "on any assignment approved by the chief" even if away from the municipality, if the "assignment is related to the fire protection service of the municipality." 40 ILCS 5/4-110 (West 2012).

- 5 -

¶ 19    Finally, defendants assert that the trial court erred when it relied on the Workers' Compensation Act and the concept of "arising out of and in the course of employment" to insert into the definition of "act of duty" a "reasonableness" element. Defendants argue that, even if plaintiff's fall is compensable under the Workers' Compensation Act, the *Pension Code* explicitly defines "act of duty" such that line-of-duty pension eligibility turns only on whether plaintiff was injured performing acts imposed on and required of her, not whether her acts were otherwise reasonable.

¶ 20    Plaintiff, in turn, asserts that the trial court correctly determined that her injury occurred while she was performing the duty of being timely and prepared to begin work on or before 7 a.m., which was a requirement specifically prescribed by the CBA, her performance evaluations, and Ross's e-mail. Plaintiff argues that she was expected to be ready and in uniform by 7 a.m., which meant that she had to be at work some time before 7 a.m. in order to comply. Plaintiff asserts that defendants are actually arguing that, "had the accident occurred three minutes or one minute before" 7 a.m., plaintiff still would not have been engaged in an act of duty. Plaintiff asserts that, because the assignment approved by her chief was to be at the fire station, in uniform, at 7 a.m., "all duties required of her to comply with that assignment are also 'on duty.'" She asserts that this conclusion is not simply a reasonable inference but rather is directly confirmed by Ross's e-mail and her performance reviews. Plaintiff also notes that the Pension Code provides that a firefighter can be considered on duty even when he or she is away from the municipality, whereas, here, she was at the fire station when her injury occurred. In addition, plaintiff asserts that, to constitute an act of duty, an act need not be dangerous and can be routine. As to the element of discretion involved in a firefighter's activities, plaintiff states:

> "Virtually any order or Standard Operating Guideline or other performance requirement carries with it an element of discretion. Standard Operating Policies/Guidelines do not contain the step by step manner of accomplishing the goal of suppressing a fire, transporting a victim from his residence to the ambulance, ventilating a roof, performing routine maintenance, getting in and out of each vehicle, complying with mandatory physical fitness routines, or the other regular shift activities prescribed for firefighting employees."

¶ 21    Finally, plaintiff asserts that the trial court did not improperly rely on cases interpreting the Workers' Compensation Act; rather, it simply referenced those cases as supporting the conclusion that it had already reached.

¶ 22    The Board's decision that, when she fell and injured her shoulder, plaintiff was not performing an "act of duty" as defined by the Pension Code was not clearly erroneous. First, we note that, in our view, the allegedly "imposed" requirement of "punctuality" is a red herring. Plaintiff was not injured because she was rushing or desperately trying to be punctual; indeed, the evidence shows that she was 20 minutes early. Plaintiff's reliance on the "punctuality" requirement has led the parties to raise hypotheticals that simply confuse the issues here (*e.g.*, what if she had been only one minute early, what if she had been two minutes late). Rather, in our view, the pertinent facts are simple: plaintiff fell when she arrived at work before her scheduled shift. "Punctuality" is not the point.

¶ 23    In any event, the Board's decision was simply not clearly erroneous. Again, "act of duty" is explicitly defined by the Pension Code. Plaintiff's argument that she was injured while performing an act of duty relates to the first portion of the definition, as she contends that she

fell while performing an act imposed upon her by Village ordinances or fire-department rules or regulations. However, plaintiff's argument essentially would require an interpretation that, because the Village and the fire department require a firefighter to appear at work on time, any act in the process of doing so constitutes an act of duty. The Board did not clearly err in concluding that such an interpretation extends the definition too far. Indeed, not every act that happens even *at work*, *while on duty*, constitutes an "act of duty" for purposes of eligibility for a line-of-duty pension, as the last portion of the definition provides that an act of duty is one performed while on duty and "having for its direct purpose the saving of the life or property of another person." *Id.* Here, plaintiff was not yet on duty, as her shift had not started, and no Village ordinance or fire-department rule or regulation imposed upon plaintiff the act of exiting her vehicle in the parking lot.

¶ 24 Although plaintiff cites numerous examples of other alleged acts of duty that require discretion in their performance, she misses the point in that each of the acts she cites would occur while the firefighter was performing a required task while on duty. Further, we disagree with plaintiff's assertion that "all duties required of her to comply" with the assignment to be ready to start her shift at 7 a.m. must also be considered as having occurred while "on duty." Such an interpretation would extend the concepts of "on duty" and "act of duty" beyond their intended scope. (Would this interpretation include injuries incurred from a fall while showering at home before work? Would it include injuries incurred in a car accident on the way to work?) Indeed, at oral argument, plaintiff seemed to agree that anything happening off of the fire station premises would extend the statutory definition too far, but what if another fire station does not have on-site parking and a fall happens on the street? Or what if plaintiff arrived not 20 minutes early, but 50 minutes early?[2] We agree with defendants that, under the facts here, construing plaintiff's injury as having happened while she was performing an act of duty would strain the definition to an unworkable degree.

¶ 25 As to the parties' argument concerning the propriety of the trial court's reference to the Workers' Compensation Act in interpreting the Pension Code, we note that the scope of our review is limited to the Board's decision, not the trial court's, and so we need not address the argument.

¶ 26                                    III. CONCLUSION
¶ 27 For the reasons stated, the judgment of the circuit court of Du Page County is reversed and the Board's decision is confirmed.

¶ 28 Reversed.
¶ 29 Board decision confirmed.

---

[2]These types of questions reinforce our view that our review should not be *de novo* but, rather, that deference in the form of the clearly erroneous standard of review must be given to the Board's interpretation of whether certain acts performed by a firefighter constitute acts of duty as statutorily defined.